UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| RAY BAKER, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | Case No. 4:06CV200 RWS |
|  | ) |  |
| ROBERT BRADLEY, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

# MEMORANDUM AND ORDER

This matter is before me on defendants' motion for summary judgment. For the reasons stated below, the motion will be granted.

## Undisputed Facts

Baker is African-American and was the interim Chief of Police for the Village of Calverton Park when its trustees hired a white police officer to fill the job. Baker was then fired. Baker sought a termination hearing on the record, but Calverton Park refused to grant him one. Baker then filed a petition for writ of mandamus in state court seeking to compel the trustees of Calverton Park[1] to provide him with a hearing or pay damages. The parties refer to this case as Baker

---

[1] The petition named trustees Bradley, Robbins, Jacobi, Paunovich and Brown as defendants in their individual and official capacities. These trustees are also named as defendants in the instant complaint.

I. Baker I was removed to this Court and assigned to the Honorable Magistrate Judge Audrey G. Fleissig. Judge Fleissig dismissed the federal claims[2] for failure to state a claim and remanded the state-law claims back to state court. The parties refer to the remanded case as Baker II.

Upon remand, Baker amended his state-court petition against the trustees to include the following claim:

> V. Missouri Human Rights Act - Baker
>
> 17. [Baker] reallege[s] the allegations contained in paragraphs 1 through 16 as if fully set forth herein.
>
> 18. Plaintiff Baker is an African American.
>
> 19. Defendants had promised Baker he would have an equal opportunity to become Chief of Police. Defendants denied Baker said opportunity.
>
> 20. Instead of considering or promoting Baker to the position of Chief of Police, Defendants hired a less-experienced, less-qualified, white person as Chief of Police. Baker was terminated.
>
> 21. In May, 2000, Defendants granted a hearing on the record, identical to the hearing Plaintiff Baker requests in this case to Officer Brian Brittan, who is white.
>
> 22. The actions of Respondents in refusing to conduct the hearing

---

[2] Baker alleged that Calverton Park's refusal to provide a hearing deprived them of rights secured by the takings clause and due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983.

> pursuant to Section 13.1 of the Village of Calverton Park, Missouri Personnel Policy and Procedures Manual in accordance with the provisions of § 536.070 RSMo. and allow a court reporter to record the proceedings has caused damage to Plaintiffs/Relators.
>
> 23. The conduct of Respondents and their agents was taken intentionally and with reckless disregard for Relators' rights protected under the Missouri Human Rights Act, Mo.Rev.Stat. § 213.010 et seq.

This claim was asserted against the trustees in their individual and official capacities. Calverton Park was not named as a defendant. Following a hearing, the state court issued a judgment dismissing Baker's Missouri Human Rights Act claim (Count V) for failure to state a claim.

After being dismissed from state court, Baker filed the instant complaint alleging that the failure to promote him to Chief of Police, his subsequent discharge and Calverton Park's refusal to provide him with a hearing on the record were racially motivated and discriminatory in violation of 42 U.S.C. § 1981, Title VII and Baker's 42 U.S.C. § 1983 equal protection rights. Baker's complaint also alleges that the defendants' actions support a § 1983 claim for civil conspiracy in violation of § 1985 and state-law claims for tortious interference with business expectancy and civil conspiracy. Baker once again names the trustees of Calverton Park in their individual and official capacities as defendants. In addition, he is also suing Calverton Park and Michael Dawson (the white officer

selected to be Chief of Police over Baker) in his official and individual capacities.[3]

Defendants move for summary judgment, claiming that res judicata bars Baker's claims as a matter of law. Baker opposes summary judgment, arguing that his discrimination claims were not previously litigated. I disagree. Because res judicata bars the instant complaint, summary judgment will be entered in favor of defendants on all counts of the complaint. My analysis follows.

## Standards Governing Summary Judgment

In determining whether summary judgment should issue, I must view the facts and inferences from the facts in the light most favorable to plaintiff. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Defendants have the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once defendants have met this burden, plaintiff cannot rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact

---

[3]Because Dawson died after the complaint was filed, I gave Baker the opportunity to demonstrate that a successor defendant could be named in Dawson's place for the official capacity and individual claims pending against him. Baker has failed to do so.

exists. Fed. R. Civ. P. 56(e). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

## Discussion

Defendants contend that res judicata bars the instant complaint because Baker litigated this cause of action in Baker II. Here, the preclusive effect of Baker II "is governed by the law of Missouri, the State in which the judgment was rendered." Misischia v. St. John's Mercy Health Systems, 457 F.3d 800, 804 (8th Cir. 2006). "Under Missouri law, a prior judgment bars a subsequent claim arising out of the same group of operative facts 'even though additional or different evidence or legal theories might be advanced to support' the subsequent claim." Id. (quoting Chesterfield Village v. City of Chesterfield, 64 S.W.3d 315, 320 (Mo. banc 2002)). "The doctrine of claim preclusion bars not only the claims asserted in the first action but also claims 'which the parties, exercising reasonable diligence, might have brought forward at the time." Id. (quoting Chesterfield Village, 64 S.W.3d at 318)).

To determine whether res judicata applies, Missouri courts review whether separate actions arise out of the same act, contract or transaction, and whether the parties, subject matter and evidence necessary to sustain the claim are the same in

both actions. Lay v. Lay, 912 S.W.2d 466, 472 (Mo. 1995) (internal citations and quotation marks omitted). "The word 'transaction' has a broad meaning. It has been defined as the aggregate of all the circumstances which constitute the foundation for a claim. It also includes all of the facts and circumstances out of which an injury arose." Id. (internal citations omitted).[4]

Baker first argues that res judicata does not apply because the defendants are not the same in both actions. Although Calverton Park was not named as a defendant in Baker II, res judicata can apply if Calverton Park was in privity with the defendants that were named in that case. See Vogt v. Emmons, 158 S.W.3d 243, 247 (Mo. Ct. App. 2005). Here, this element is satisfied because Baker sued the trustees of Calverton Park in their individual and official capacities in Baker II. A suit against the trustees in their official capacities is a suit against Calverton Park, so I find that the "same parties" element of res judicata is met in this case.[5]

---

[4] Res judicata also requires the prior judgment to have been a final judgment on the merits entered by a court of competent jurisdiction. See Federated Dept. Stores, Inc. v. Moitie, 452 U.S. 394, 398-99 (1981). Baker concedes that these two elements are met.

[5] I also believe the privity element would be met with defendant Dawson and his successor to the official-capacity claims. However, I need not decide that issue because Dawson died during the pendency of this complaint and plaintiff has failed to demonstrate that he is entitled to prosecute any of his claims against Dawson's successor. Therefore, I am dismissing Dawson from this action by this Order.

See Hickman v. Electronic Keyboarding, Inc., 741 F.2d 230, 233 (8th Cir. 1984) (under Missouri law, "privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right . . . .") (internal citations and quotation marks omitted).

The crux of Baker's opposition to summary judgment is that this case does not involve the same issues that were litigated in Baker II. In support of his argument, Baker contends that his amended petition in Baker II "really" only sought a post-termination hearing. He claims that it was "unfortunate" that Count V was titled "Missouri Human Rights Act" because it did not actually raise racial discrimination in employment or wrongful termination (the claims being raised here). Instead, Baker claims that the facts "regarding race" that were alleged in Count V were "merely background recitations meant to set the stage," presumably for his request for a post-termination hearing.

Baker misstates his prior claims. Although Baker may now regret it, the amended petition in Baker II alleges that Baker was not promoted, terminated and then denied a hearing because of his race in violation of his "rights protected

under the Missouri Human Rights Act, Mo.Rev.Stat. § 213.010 et seq."[6]  As in the prior case, Baker contends here that he was not promoted, terminated and then denied a hearing because of his race.  Because the same transaction forms the basis for the claims asserted in Baker II and the instant action, this action -- although based on federal statutes (Title VII, § 1981 § 1983 and § 1985) rather than the MHRA -- remains barred by res judicata.  See Misischia, 457 F.3d at 804 ("a prior judgment bars a subsequent claim arising out of the same group of operative facts even though additional or different evidence or legal theories might be advanced to support the subsequent claim.")  (internal citations and quotation marks omitted).  Baker's claims for tortious interference with business expectancy and civil conspiracy are barred as well because he relies on the same set of operative facts to support these state-law claims.[7]  Because he could have brought these

---

[6] The Missouri Human Rights Act, Mo. Rev. Stat. § 213.010 et seq., prohibits employment discrimination (defined as "unfair treatment") based on race, among other things.  See Mo. Rev. Stat. § 213.010(5).

[7] In Count VII, Baker alleges that the Calverton Park Personnel and Procedures Manual created an "agreement" that he would not be terminated without cause and/or without certain procedural protections, that he had a reasonable expectancy of an ongoing business relationship with Calverton Park, that the defendants knew of Baker's valid business expectancy in ongoing employment, and that the denial of a promotion and his subsequent termination based on his race and without a due process hearing constituted an intentional interference in his ongoing business expectancy with Calverton Park, thereby causing him damage.  In Count VIII, Baker alleges that trustees and Dawson

claims in Baker II, Missouri law prohibits him from bringing them now. See Chesterfield Village, 64 S.W.3d at 318 ("The doctrine of claim preclusion bars not only the claims asserted in the first action but also claims 'which the parties, exercising reasonable diligence, might have brought forward at the time.'").

Additionally, the undisputed evidence demonstrates that Baker actually litigated the issues of racial discrimination in state court. In opposition to the trustees' motion to dismiss Baker II, Baker argued that his racial discrimination claims were not untimely filed because actions "under Missouri Human Rights Act are subject to the principles of waiver, estoppel and equitable tolling." (Defs. Ex. 2 to Summ. J.). The state court disagreed, and dismissed Baker's MHRA claim for failure to state a claim, which (as Baker concedes) operates as a final judgment on the merits.

Baker's most compelling argument in opposition to summary judgment is that he should not be precluded by res judicata from asserting his federal discrimination claims because he did not obtain his right-to-sue letter from the

---

conspired "to take adverse employment actions against [him] because of his race, to violate [his] rights secured by the constitution and laws of the United States and/or to tortiously interfere with his reasonable business expectancy in ongoing employment." (Pl.'s Complaint ¶ 96). The overt acts allegedly committed in furtherance of this conspiracy were as follows: 1) they failed to promote Baker to Chief of Police because of his race; 2) they fired him because of his race; and 3) they refused to afford him a due process hearing because of his race. (Id. at ¶ 99).

EEOC until after the conclusion of Baker II.  Baker reasons that his Title VII claims did not exist before he received his right-to-sue letter, so res judicata cannot not bar him from asserting them now.  In support of this argument, Baker relies on <u>Lundquist v. Rice Memorial Hospital</u>, 238 F.3d 975, 978 (8th Cir. 2001), for the proposition that "claim preclusion cannot apply to a claim that arises after the first suit is filed . . .".  While a correct statement of law, <u>Lundquist</u> is inapposite here because it only applies where <u>facts</u> that support a new claim occur <u>after</u> the first suit is filed.  <u>Id.</u>  That did not happen here.  All of the facts supporting Baker's claims in the instant complaint were known to Baker when he amended his state-court petition in Baker II: he had already been passed over for Chief of Police, terminated and denied his requested hearing on the record.  His claims for racial discrimination were all in existence before Baker II was filed whether or not he had his right-to-sue letter from the EEOC.  The right-to-sue letter did not create Baker's claims for discrimination; at most, it merely authorized him to proceed in their prosecution under Title VII.  As the Seventh Circuit Court of Appeals noted in <u>Herrmann v. Cencom Cable Associates, Inc.</u>, 999 F.2d 223, 225 (7th Cir. 1993), plaintiffs in discrimination actions have no immunity from res judicata.  Rather than litigating his discrimination claims piecemeal, Baker could have asked the EEOC to accelerate the administrative

process or brought all claims (including his Title VII claims) in Baker II and then requested a stay from the court pending the issuance of his right-to-sue letter. <u>See id.</u> He did neither. Because Baker previously litigated the issues relating to his employment and subsequent termination by Calverton Park, he is precluded from raising them a second time here. For this reason, defendants are entitled to summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's claims against defendant Dawson are dismissed.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment is granted, and defendants Bradley, Robbins, Jacobi, Paunovich, Brown and the Village of Calverton Park shall have summary judgment on all counts of plaintiff's complaint, and plaintiff's complaint is hereby dismissed with prejudice.

A separate Judgment is entered this same date.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 8th day of February, 2007.